**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0506n.06

No. 16-2192

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 29, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KYISHA JONES, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| JEH JOHNSON, et al., | ) | |
| | ) | **OPINION** |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Kyisha Jones appeals the dismissal of her twenty-four count complaint alleging violations of constitutional, federal, and state law. For the reasons discussed below, we **AFFIRM** the district court's judgment as to Counts Two through Twenty-Four, but **REVERSE** the district court's judgment dismissing Count One, an official-capacity claim against the Secretary of the Department of Homeland Security alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

**I. BACKGROUND**

**A. Jones's Employment with CBP**

Jones has been a U.S. Customs and Border Protection (CBP) Officer since 2003 and classified as a CBP Enforcement Officer since 2007. R. 15 (Amended Compl. at ¶ 16–18) (Page ID #218). In June 2011, Jones was denied a position as a Supervisory CBP Officer. *Id.* at

¶¶ 38–39 (Page ID #220). DHS filled five Supervisory CBP Officer openings at that time and, according to Jones, CBP promoted four white male employees and one white female employee. *Id.* at ¶ 44 (Page ID #221). When Jones asked why she did not receive the promotion, she was told that it was because she had a suspension on her record. *Id.* at ¶ 40 (Page ID #220). Jones received a five-day suspension in 2007 for failing to follow a supervisor's order. *Id.* at ¶ 24 (Page ID #219). In August 2011, DHS filled additional Supervisory CBP Officer openings from the same pool of applicants who had applied for the June 2011 promotion, and again Jones did not receive the promotion. *Id.* at ¶¶ 42–43, 53 (Page ID #221). DHS filled two openings at this time, promoting one African-American male employee and one African-American female employee. *Id.* at ¶ 44 (Page ID #221).

The African-American male employee who received the promotion in August 2011 also, like Jones, had a suspension on his record. *Id.* at ¶ 45 (Page ID #221). The promoted employee was suspended for three days in 2009 for failing to report outside employment. R. 21 (Blanchard EEO Decl. at ¶ 11) (Page ID #392). Jones alleges that their offenses were comparable. R. 15 (Amended Compl. at ¶ 46) (Page ID #221). Jones states that, "According to the June 21, 2004 U.S. Customs and Border Protection Table of Offenses and Penalties, there is no difference in the severity between a category E (Plaintiff's) and a category P (African-American male's) offense." *Id.* CBP Port Director Roderick Blanchard, on the other hand, considered the promoted employee's violation to be technical violation, but did not consider Jones's violation to be a technical violation. R. 21 (Blanchard EEO Decl. at ¶ 11) (Page ID #392). Blanchard stated that CBP would have approved the promoted officer's request to perform outside work if he had

submitted a timely request. *Id.* Blanchard said that at the time of Jones's suspension, she lacked leadership skills, but he also expressed his opinion that Jones had recently shown significant progress in this area. *Id.*

On September 7, 2011, Jones filed an EEOC charge alleging sex discrimination. R. 15 (Amended Compl. at ¶ 54) (Page ID #222). On December 27, 2011, the EEOC notified Jones that it had completed its investigation and that she could request either a hearing or a final agency decision. *Id.* at ¶ 55 (Page ID #222). She requested a final agency decision. *Id.* at ¶ 58 (Page ID #222). On March 13, 2012, the EEOC issued a final decision concluding that CBP did not discriminate against Jones based on her sex, but Jones did not find out about the decision until a year later. *Id.* at ¶¶ 59, 63, 71 (Page ID #222–23).

In the interim, in June 2012,[1] Jones again applied for a promotion to supervisory CBP officer. *Id.* at ¶ 65 (Page ID #223). She was again denied the position. *Id.* According to Jones, CBP promoted "primarily white males to fill these available positions." *Id.* at ¶ 66 (Page ID #223).

In March 2013, Jones contacted the EEOC to amend her charge to include allegations of race discrimination and retaliation. *Id.* at ¶ 67 (Page ID #223). That is when she found out that the EEOC had issued a final decision concluding that CBP did not discriminate against Jones based on her sex. *Id.* at ¶ 71 (Page ID #223). When she received the final agency decision, she "became aware for the first time that CBP defended her gender discrimination allegations by

---

[1]As discussed below, by this point Jones was on paid administrative leave and being investigated for fraud and cross-border smuggling. Her administrative leave began on January 31, 2012.

basically describing her as a stereotypical, angry black female." *Id.* at ¶ 178 (Page ID #235).

Based on this defense, Jones filed a second EEOC charge on April 9, 2013 alleging sex and race

discrimination (she also appealed the decision on her first EEOC complaint). *Id.* at ¶¶ 75, 175

(Page ID #224, 234). She alleges that she did not become aware of the basis for the second

(April 9, 2013) charge until she contacted the EEOC about her first (September 7, 2011) charge

because that is when she received the final agency decision for the first charge and learned that

CBP had defended itself by, she alleges, stereotyping her.

Jones then received a final agency decision dismissing the second charge. *Id.* at ¶ 180

(Page ID #235). She appealed on July 26, 2013 and September 5, 2013, and received a decision

affirming the final agency decision on February 27, 2014. *Id.* at ¶¶ 180–81 (Page ID #235).

## B. Investigation for Fraud and Smuggling

While Jones was pursuing a promotion, she was also a target of a smuggling

investigation. Alexander McLellan, a Special Agent with the Department of Homeland

Security's Office of Inspector General, learned that in 2006 Jones was allegedly the victim of

identity theft. R. 15 (Amended Compl. at ¶¶ 32, 33, 80) (Page ID #219, 224). According to

Jones, someone fraudulently incurred one million dollars of debt in her name. She alleges that

the creditors relieved her from this debt. McLellan interviewed Jones about identity theft for the

first time in December 2009. *Id.* at ¶¶ 77, 80 (Page ID #224).

McLellan interviewed Jones again in December 2011. *Id.* at ¶¶ 81–82 (Page ID #224).

During the second interview, McLellan questioned Jones about cross-border smuggling and

accused her of being part of a smuggling ring. *Id.* at ¶ 84 (Page ID #224). He said that an

informant claimed that a black, female, approximately fifty-year-old CBP officer named "Kisha" was involved in smuggling. *Id.* at ¶¶ 85–86 (Page ID #224–85); *see also* R. 21-5 (McLellan Decl. at ¶ 4) (Page ID #410).[2] According to McLellan's Declaration, his "investigation also revealed that the group responsible for smuggling drugs across the border . . . was at the same time, recruiting a younger black female CBP officer." R. 21-5 (McLellan Decl. at ¶ 4) (Page ID #410–11.) According to Jones, during the interview, "McLellan indicated that the informant stated that 'a curvaceous, middle-aged woman' was helping them with their smuggling." R. 15 (Amended Compl. at ¶ 86) (Page ID #225). Jones alleges that McLellan "falsified facts, including that an informant indicated that 'Kisha' at the border assisted a cartel in smuggling across the border." *Id.* at ¶ 85 (Page ID #224). She also denies that the physical description matches her, and points out that her name is Kyisha, not Kisha (although presumably she intends to emphasize that her name is not Keisha). *Id.* at ¶¶ 87, 89 (Page ID #225). Jones alleges that McLellan said he would seek an arrest warrant for fraud/identity theft if she did not tell him about the drug smuggling, and that he failed to inform her of her rights during the interview. *Id.* at ¶¶ 91–92 (Page ID #225).

McLellan continued to investigate Jones's reported identity theft. According to Defendants, he learned that Jones had signed affidavits of occupancy for two different properties (one in West Bloomfield and one in Detroit), each stating that the property would be her primary residence. On one application she indicated that her income was $15,000/month and on the other

---

[2]McLellan's declaration says that an FBI informant indicated that the CBP officer involved with cross-border smuggling was named "Keisha," not "Kisha" as Jones says in her Amended Complaint. R. 21-5 (McLellan Decl. at ¶¶ 3–4) (Page ID #410).

she indicated that her income was $8,000/month. R. 40 (Defs.' Mot. to Dismiss and for Summ. J at 8–9) (Page ID #1052–53). On each application, she indicated that she was employed as the Vice President of Operations for a different company. *Id.* (Page ID #1052–53). She received mortgages for both of these properties. *Id.* (Page ID #1052–53). McLellan submitted an affidavit to support a criminal complaint. R. 15 (Amended Compl. at ¶ 113) (Page ID #228).

The U.S. Attorney's Office for the Eastern District of Michigan filed a sealed criminal complaint against Jones on January 23, 2012 alleging various fraud crimes. *Id.* at ¶¶ 111–12) (Page ID #228); R. 40 (Defs.' Mot. to Dismiss and for Summ. J at 9) (Page ID #1053) (citing Compl. in Case No. 1:12-mj-30064). Jones alleges that McLellan provided false testimony in his affidavit and suppressed favorable information. R. 15 (Amended Compl. at ¶ 114–17) (Page ID #228). On January 25, 2012, CBP instructed Jones to report to the Office of Inspector General, where McLellan arrested her. *Id.* at ¶¶ 127–28 (Page ID #229). Jones alleges that McLellan told her that the government would unseal the complaint against her if she did not give him information about cross-border smuggling. *Id.* at ¶ 130 (Page ID #230). The next day, she appeared before a magistrate judge, and was processed and released; that day, the complaint was unsealed. *Id.* at ¶¶ 136–40 (Page ID #230). On January 31, 2012, CBP placed Jones on paid administrative leave. *Id.* at ¶ 144 (Page ID #231). On February 10, 2012, the United States filed a motion to dismiss the criminal complaint without prejudice, stating that the government needed more time to investigate. *Id.* at ¶¶ 149–50 (Page ID #232).

Later, the State of Michigan pursued felony charges against Jones. McLellan provided documentation about Jones's alleged mortgage fraud to the West Bloomfield police. *Id.* at ¶ 195

(Page ID #237). McLellan interviewed Jones again on May 29, 2014. *Id.* at ¶ 198 (Page ID #237). On July 17, 2014, the West Bloomfield Police Department notified Jones that it had a warrant for her arrest, and on July 18, Jones turned herself in. *Id.* at ¶¶ 200–01 (Page ID #237). Jones alleges that the West Bloomfield police department did not conduct an independent investigation, but relied on McLellan. *Id.* at ¶ 207 (Page ID #238). Jones entered a nolo contendere plea on September 18, 2015, *see* Appellee Br. at 19 (citing R. 40-1 (*Michigan v. Jones* Judgment) (Page ID #1121–23)), but Jones says that, as of the filing of her brief on October 4, 2016, the case is ongoing, *see* Appellant Br. at 27.

In November 2013, Jones filed a complaint with the United States Office of Special Counsel (OSC) alleging that McLellan targeted African Americans, misused his authority, and falsely arrested Jones. *Id.* at ¶ 183 (Page ID #235). OSC found that McLellan did not violate any policies. *Id.* at ¶ 190 (Page ID #236). In June 2014, Jones filed a second complaint about McLellan with OSC alleging that McLellan targeted her because of her race and in retaliation for filing an EEOC charge. *Id.* at ¶ 226 (Page ID #240). In September 2014, OSC informed Jones that it was closing her complaint. *Id.* at ¶ 231 (Page ID #240).

According to Jones, as of the date her brief was filed, she remained on administrative leave. Defendants state that Jones was suspended indefinitely effective February 14, 2015. Appellee Br. at 20 (citing R. 40-2) (Suspension Letter at 2) (Page ID #1126).

## C. Procedural History

Jones filed her initial Complaint in the district court on May 27, 2014. R. 1 (Compl.) (Page ID #1–54). Jones later filed an Amended Complaint with counts alleging violations of

Title VII, constitutional law, and state law. R. 15 (Amended Compl. at 27–66) (Page ID #241–80). Defendants filed a Motion to Dismiss and For Summary Judgment on Plaintiff's Amended Complaint. R. 40 (Defs.' Mot. to Dismiss and for Summ. J) (Page ID #1023–1136). In an order dated August 19, 2016, the district court granted the Defendants' Motion to Dismiss on all claims, specifying that it was granting the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), rather than the motion for summary judgment. R. 49 (Op. and Order Granting Mot. to Dismiss and for Summ. J at 1 n.1, 49) (Page ID #1520, 1546).

## II. TITLE VII SEX-DISCRIMINATION CLAIM

The district court erred by dismissing Jones's Title VII sex-discrimination claim for failure to state a claim on which relief can be granted. Jones stated a plausible claim of discrimination and a plausible claim that she exhausted her administrative remedies as to some aspects of her claim. Dismissal under Rule 12(b)(6) is inappropriate if a complaint "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks omitted) (alteration in original).

First, Jones stated a plausible claim of sex discrimination. "[A] plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a

member of the protected class received the job at the time plaintiff's request for the promotion was denied." *Hicks v. SSP Am., Inc.*, 490 F. App'x 781, 783 (6th Cir. 2012).

There is no dispute that Jones is a woman; that in June 2011, she applied for and was denied a position as Supervisory CBP Officer; that she was qualified for the position; or that she was considered for the position. The only disputed element is the fourth. Jones has stated a plausible claim that a man of similar qualifications received the promotion when Jones was denied. When Jones asked why she did not receive the promotion in June 2011, she was told that it was because of her suspension. At the time, she accepted this explanation. Then, in August 2011, DHS filled additional supervisory CBP officer openings from the same pool of applicants that applied for the promotion in June 2011. In the August 2011 round, an African-American male employee who also had a suspension on his record did receive the promotion. Because Jones did not receive the promotion and a male candidate who also had a suspension on his record did receive the promotion, it is facially plausible that Jones's sex was a factor in CBP's decision not to promote her. Indeed, Jones has provided a somewhat detailed explanation for why sex discrimination is a plausible explanation for CBP's failure to promote her—noting that the promoted employee's suspension was more recent than her suspension, alleging that their violations were of comparable severity, and also pointing out her otherwise "stellar annual performance evaluations." R. 15 (Amended Compl. at ¶ 21, 45–46) (Page ID #218, 221).

Second, Jones stated a plausible claim that she exhausted her administrative remedies as to some, but not all, aspects of her claim. In this case, there are three rounds of promotions at issue: June 2011, August 2011, and June 2012. Jones has stated a plausible claim that she

exhausted her administrative remedies as to the August 2011 and June 2011 rounds, but not the June 2012 round. "A person seeking to bring a discrimination claim under Title VII in federal court must first exhaust her administrative remedies." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006); *see also McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002). To properly exhaust administrative remedies, a complainant must initiate contact with the EEOC within forty-five days of the alleged discrimination. 29 C.F.R. § 1614.105.

Jones filed her first EEOC charge on September 7, 2011, within forty-five days of the August 2011 round of promotions. Jones exhausted her administrative remedies as to the August 2011 round of promotions.

Because it is at least plausible that the failure to promote Jones during the June 2011 and August 2011 rounds of promotions constitutes one continuing violation, Jones has stated a plausible claim that she exhausted her administrative remedies as to the June 2011 round of promotions as well as the August 2011 round of promotions. The key question as to the June 2011 round of promotions is whether the June 2011 was a promotion process separate and distinct from the August 2011 round, or whether the June 2011 round was part of a single Summer 2011 promotion process that included two rounds or stages. In *National RailRoad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period" and that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113–14. It also clarified that "failure to promote" constitutes a discrete discriminatory act. *Id.* at 114. However, at least as it applies

to the facts of this case, *Morgan* leaves open the question of what constitutes a single "failure to promote." CBP may have failed to promote Jones twice, once in each round of promotions. On the other hand, CBP may have failed to promote Jones only once if CBP engaged in a unitary process over the course of Summer 2011 of promoting employees to Supervisory CBP Officers. Resolving this issue depends on the specific facts about the promotion process(es), including whether CBP treated them as two separate promotion processes or one process that it carried out in two stages. Accordingly, at the motion to dismiss stage, it would be premature to dismiss Jones's allegation of sex discrimination as to the June 2011 round of promotions.

As to the June 2012 round of promotions, Jones did not exhaust her administrative remedies. Jones cannot plausibly argue that the June 2012 round is part of the same promotion process as the June 2011 round of promotions, and cannot argue that she exhausted her administrative remedies as to the June 2012 round by filing an EEOC charge on September 7, 2011 (several months before the alleged violation occurred). And Jones's April 9, 2013 EEOC charge did not timely exhaust her administrative remedies, nor did her March 2012 contact with the EEOC. Finally, as discussed more fully below, she did not timely amend her complaint to include allegations related to the June 2012 round of promotions.

Therefore, we conclude that the district court erred by dismissing Jones's sex-discrimination claim as to the June 2011 and August 2011 rounds of promotions. Jones stated a plausible claim of sex discrimination and a plausible claim that she exhausted her administrative remedies as to the June 2011 and August 2011 rounds of promotions. However, Jones did not exhaust her administrative remedies as to the June 2012 round of promotions. Having

11

erroneously determined that Jones's claim should be dismissed under the Rule 12(b)(6) standard, the district court did not consider whether Defendants' motion for summary judgment should be granted. Because the district court did not consider Defendants' motion for summary judgment, we will not consider it, either. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) ("[I]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.") (alteration in original).

### III. TITLE VII RACE-DISCRIMINATION AND RETALIATION CLAIMS

Jones did not properly exhaust her administrative remedies as to her Title VII race discrimination and retaliation claims. As noted above, to bring a discrimination claim under Title VII, a plaintiff must first exhaust her administrative remedies. *McFarland*, 307 F.3d at 406. A complainant must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a). A complainant may add additional allegations while the EEOC is in the process of investigating: "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). The only provision for amending the complaint after the investigation has concluded requires the permission of the administrative judge. *Id.*

Jones argues that she exhausted her race-discrimination claim because in March 2013 she sought to amend her September 2011 charge to include race discrimination. Jones attempted to add a retaliation claim to her September 2011 charge at the same time, and in the same way, that

she attempted to add a race-discrimination claim. She argues that her attempt to amend her charge is sufficient for exhaustion because she did not receive the March 2012 notification of the final agency decision and, at the time she sought to amend, thought her charge was still pending. Jones's argument misunderstands the rule. Jones received notice that the EEOC had completed its investigation on December 27, 2011. The rule states that "[a] complainant may amend a complaint at any time *prior to the conclusion of the investigation.*" 29 C.F.R. § 1614.106(d) (emphasis added). Jones does not dispute that that the EECO completed its investigation in December 2011 or that she received notice that EEOC had completed its investigation. Jones filed a second EEOC charge on April 9, 2013, more than forty-five days after the allegedly discriminatory conduct.

Therefore, Jones never amended her September 2011 EEOC charge to include claims of race discrimination or retaliation. Jones did not exhaust her administrative remedies as to her race-discrimination or retaliation claims, and the district court properly dismissed these claims.

## IV. CONSTITUTIONAL-TORT CLAIMS

### A. Claims against Johnson

Jones brought constitutional-tort claims against Jeh Johnson in his official capacity as then-Secretary of the Department of Homeland Security (DHS). Jones's complaint requested damages as a remedy for her official-capacity constitutional-tort claims. Lawsuits seeking damages from the United States or federal agencies as a remedy for constitutional violations are prohibited. *See FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994). Jones points out that she seeks equitable relief as well as damages, but does not point us to any authorities supporting her

argument that she can seek equitable relief for her claims. Therefore, the district court properly dismissed Jones's constitutional-tort claims against Johnson in his official capacity with DHS.

## B. Claims against McLellan

Jones also brought constitutional-tort claims against McLellan in his individual capacity, which is proper under *Bivens*. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). However, because Jones fails to state a plausible claim for relief on any of these claims, the district court properly dismissed them.

First, Jones alleges that McLellan violated her right to due process because, she says, McLellan failed to inform her of her *Miranda* rights. R. 15 (Amended Compl. at 32) (Page ID #246). Failure to inform someone of her *Miranda* rights is not generally a due-process violation. *See Chavez v. Martinez*, 538 U.S. 760, 772, 777 (2003).

Second, Jones alleges that McLellan violated her right to equal protection. R. 15 (Amended Compl. at 35) (Page ID #249). In support of this claim, Jones alleges that, "[t]o bolster his allegations, Defendant McLellan falsified facts, including that an informant indicated that 'Kisha' at the border assisted a cartel in smuggling across the border." *Id.* at ¶ 85 (Page ID #224). She does not provide any facts to support her assertion that McLellan fabricated this tip. This allegation is a "mere conclusory statement[]," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that fails to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

Third, Jones alleges false arrest, failure to investigate, and malicious prosecution. In support of these allegations, Jones says that McLellan lied and withheld exculpatory evidence and that she never committed any fraud. R. 15 (Amended Compl. at ¶ 387, 434, 466–68) (Page

14

ID #258, 262, 265). Jones does not allege plausible evidence that McLellan lied. In fact, Jones pleaded nolo contendere to fraud charges in state court. And she does not dispute that she filled out two different mortgage applications asserting inconsistent facts, i.e. stating that she would occupy both houses as her primary residence and providing inconsistent information about her income and employment. Jones's contention that McLellan lied is a "mere conclusory statement[]." *Iqbal*, 556 U.S. at 678.

Fourth, Jones alleges abuse of process. R. 15 (Amended Compl. at 39) (Page ID #253). Even putting aside the fact that the Sixth Circuit has not recognized a *Bivens* claim for abuse of process, Jones does not state a cognizable claim of abuse of process. Jones's allegation is that McLellan decided to investigate fraud because he actually wanted information about cross-border smuggling. However, McLellan did not violate the law by investigating one crime with the intention of obtaining information about another. *See Painter v. Robertson*, 185 F.3d 557, 569–70 (6th Cir. 1999).

Finally, Jones alleges negligent infliction of emotional distress and intentional infliction of emotional distress. R. 15 (Amended Compl. at 56–58, 62–64) (Page ID #270–72, 276–78). Jones fails to state cognizable *Bivens* claims for infliction of emotional distress. *Bivens* addresses violations of constitutional rights, *see Bivens*, 403 U.S. at 396, not state-law torts like negligent and intentional infliction of emotional distress.

Therefore, the district court properly dismissed each of Jones's constitutional-tort claims against McLellan in his individual capacity. We affirm the district court's judgment dismissing Jones's constitutional-tort claims against Johnson, DHS and McLellan.

## V. STATE-LAW TORT CLAIMS

Jones also brought state-law tort claims against Johnson in his official capacity, alleging negligent infliction of emotional distress and intentional infliction of emotional distress. First, pursuant to the Federal Tort Claims Act (FTCA), the United States is the only proper defendant for these claims. 28 U.S.C. § 2679(b)(1). Jones cannot bring these tort claims against Johnson in his official capacity or DHS.

Second, "[i]n order for a person to file a tort claim under the FTCA, it is required that [s]he 1) give written notice of a claim sufficient to enable the agency to investigate the claim and 2) place a value (or 'sum certain') on the claim." *Glarner v. U.S. Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994); *see also* 28 U.S.C. § 2401(b); 28 U.S.C. § 2675. Jones does not dispute that she never presented the claim in writing to DHS, which is the appropriate federal agency. *See* 28 C.F.R. § 14.2(b)(1). Instead, she argues that the complaints she filed with the OSC satisfy the exhaustion requirement. Although Jones makes arguments explaining why submitting a complaint to OSC should satisfy the "written notice" prong of the exhaustion requirement, she does not allege that her OSC complaint placed a monetary value on the claim, which is necessary to satisfy the "sum certain" prong of the notice requirement. *Glarner*, 30 F.3d at 700 ("We believe that Glarner's filing met the first requirement, for it gave the agency adequate notice to investigate the claim. . . . However, it is clear that Glarner did not place a sum certain on his claim. This requirement, while technical, is a prerequisite for filing a FTCA claim in this circuit."). Jones did not place a sum certain on her claim, and consequently did not meet

the exhaustion requirement. Therefore, we affirm the district court's judgment dismissing Jones's state-law tort claims for failure to exhaust.

## VI. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment dismissing Counts Two through Twenty-Four, **REVERSE** the district court's judgment dismissing Count One, and **REMAND** the case to the district court for further proceedings consistent with this opinion.