RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0153p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

KELLY A. COPEN; PAUL COPEN,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA; FARMERS INSURANCE,

*Defendants-Appellees*.

No. 20-3136

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:19-cv-01346—John R. Adams, District Judge.

Argued: October 9, 2020

Decided and Filed: July 6, 2021

Before: SUTTON, Chief Judge; ROGERS and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Craig G. Pelini, PELINI, CAMPBELL & WILLIAMS, LLC, North Canton, Ohio,
for Appellants. Ruchi V. Asher, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio,
for Federal Appellee. **ON BRIEF:** Craig G. Pelini, PELINI, CAMPBELL & WILLIAMS,
LLC, North Canton, Ohio, for Appellants. Ruchi V. Asher, Karen E. Swanson Haan, UNITED
STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Federal Appellee.

STRANCH, J., delivered the opinion of the court in which SUTTON, C.J., joined, and
ROGERS, J., joined in part. ROGERS, J. (pp. 13–16), delivered a separate opinion concurring
in part and dissenting in part.

---

**OPINION**

---

JANE B. STRANCH, Circuit Judge.   Paul Copen was driving his daughter Kelly's vehicle when it was struck by a driver for the United States Postal Service (USPS).  Kelly was riding in the passenger seat.  The vehicle was damaged, and both Kelly and Paul state that they were physically injured in the accident.   This case concerns whether the Copens properly presented their claim for damages to USPS under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80.  Kelly Copen alone filed a Standard Form 95, SF 95, with USPS stating that both Kelly and Paul had been injured, but they never provided a dollar amount for their personal injury damages.  The district court determined that it lacked subject matter jurisdiction because Kelly Copen had failed to provide a sum certain on her claim for personal injury, and because Paul Copen had not met the jurisdictional requirement of submitting his own claim form.

Neither Kelly nor Paul provided a sum certain to USPS, a mandatory requirement. But because we conclude that the sum certain requirement in the FTCA is not jurisdictional, we **REMAND** for further proceedings consistent with this opinion.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The accident between the Copens and the USPS driver took place on May 19, 2017.  On May 22, Kelly Copen filed her SF 95 with USPS.  The SF 95 is provided by the government as a "convenient format for supplying the information necessary to bring an FTCA claim."  DEP'T OF JUSTICE, DOCUMENTS AND FORMS, https://www.justice.gov/civil/documents-and-forms-0 (last visited May 19, 2021).  Use of the form, however, "is not required to present a claim under the FTCA."  *Id.*

Kelly listed herself as the claimant on the SF 95.  In the box titled "Basis of the Claim," she provided information about the accident and noted:  "Paul Copen (my father) was driving my

---

[1]Our colleague's dissent argues that no interest of the parties is affected by our holding that the sum certain requirement in the FTCA is not jurisdictional.  We disagree because on remand, the district court is now authorized to consider any arguments the parties may raise under Fed. R. Civ. P. 12(b)(6), including those that would have been unavailable under 12(b)(1).

vehicle and was injured and taken to Aultman Hospital, I was also examined at the hospital when I arrived." (R. 10-3, Mot. to Dismiss Exhibits, PageID 71) In the box titled "Personal Injury/Wrongful Death," Kelly listed herself and her father, and indicated that the extent of their injuries was unknown. Kelly alone signed the form, and she provided only her address and phone number. As to damages, the form requests a total amount and states: "[f]ailure to specify may cause forfeiture of your rights." On the cover page, Kelly wrote: "As we spoke earlier, I do not have rental car estimate yet or a total on medical. So I did not yet fill out those areas with numbers." (*Id.* at PageID 70) She included a vehicle repair estimate, and later that day, she sent a rental car estimate. Kelly sent USPS the final car repair bill on June 2, 2017. The Copens acknowledge that USPS paid Kelly for these items by check.

On June 16, 2017, USPS received a representation letter from counsel for Kelly Copen. The letter did not mention Paul. In response, USPS sent counsel a letter detailing the information the agency would need to consider a personal injury claim. The letter also explained: "**A claim must be for a specific dollar amount (Sum Certain). That amount must be shown in the appropriate space(s); 12 A B & D, <u>DOLLAR AMOUNT ONLY</u>.**" (*Id.* at PageID 83) (emphasis in original) USPS states that it did not receive any further information from the Copens concerning an amount of personal injury damages.

The Copens filed suit against USPS and the driver in state court on May 15, 2019, asserting claims for personal injury to both Kelly and Paul. The complaint includes general descriptions of the injuries both allegedly sustained and a demand for $25,000 in personal injury damages. USPS was served on May 22, 2019 and then removed the case to federal court. Pursuant to 28 U.S.C. § 2679(d), the United States substituted itself as defendant for both USPS and the driver. The United States then moved to dismiss for lack of subject matter jurisdiction, arguing that Kelly had failed to file a valid tort claim for personal injury because she had not identified a sum certain as required in 28 U.S.C. § 2675. The United States also argued that Paul Copen had failed to file a valid administrative claim because he had not submitted his own claim form. The district court agreed and dismissed the Copens' claims for lack of subject matter jurisdiction.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo the district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(1).  *Spurr v. Pope*, 936 F.3d 478, 482 (6th Cir. 2019).

### B.  Discussion

#### 1.  Jurisdiction

We have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  We first decide whether the FTCA's sum certain requirement is jurisdictional or is instead a mandatory claims-processing rule that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).  The difference between jurisdictional and claims-processing rules is "not merely semantic but one of considerable practical importance for judges and litigants" because labeling a rule as jurisdictional "alters the normal operation of our adversarial system."  *Id.* at 434.  Objections to a court's subject-matter jurisdiction may be raised at any point in the litigation, and the late-raising of such objections can "result in the waste of judicial resources" and can "unfairly prejudice litigants."  *Id.*  The consequences can be "especially harsh for the parties, as no one may forfeit or waive a court's subject-matter jurisdiction at the trial level—leading to new arguments on appeal, unanticipated debates on appeal, and outcome-changing results on appeal."  *United States v. Marshall*, 954 F.3d 823, 826 (6th Cir. 2020).  The Supreme Court has "urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction."  *Shinseki*, 562 U.S. at 435.

"Sovereign immunity generally bars claims against the United States without its consent," but "Congress, through the FTCA, waived this governmental immunity for claims brought" for several types of actions.  *Kohl v. United States*, 699 F.3d 935, 939 (6th Cir. 2012).

Congress established the jurisdiction of the federal courts over FTCA claims in 28 U.S.C. § 1346(b)(1):

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Housed within chapter 171 is 28 U.S.C. § 2675(a), which lays out the FTCA's agency presentment requirement:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Section 2675(b) states that a claimant cannot institute an action "for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." Thus, the requirement to present a sum certain claim first to the agency is mandatory. The question is whether it is also jurisdictional.

Our circuit has long referred to these procedures as jurisdictional prerequisites to filing suit. *See, e.g.*, *Exec. Jet Aviation, Inc. v. United States*, 507 F.2d 508, 514–15 (6th Cir. 1974) (footnote omitted) ("[T]he administrative claim procedure prescribed in 28 U.S.C. § 2675 is jurisdictional. No suit may be maintained under the Act in the absence of compliance, which cannot be waived by the Government."). However, in *Arbaugh*, the Supreme Court laid out a

"bright line" rule for whether a requirement is jurisdictional or whether it relates to the merits of a claim. 546 U.S. at 516. If Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Id.* at 515–16 (footnote omitted). And, as the Court noted in *Fort Bend County v. Davis*, ___ U.S. ___, 139 S. Ct. 1843 (2019), a requirement may also be treated as jurisdictional when Congress has incorporated it "into a jurisdictional provision. . . ." or when "'a long line of Supreme Court decisions left undisturbed by Congress' attached a jurisdictional label to the prescription." *Id.* at 1849 (quoting *Union Pac. R.R. Co. v. Locomotive Eng'rs*, 558 U.S. 67, 82 (2009) (cleaned up)). *Davis* also noted that, over the years, the Supreme Court has characterized many mandatory claims-processing rules as non-jurisdictional. *Id.* at 1849–50 (collecting cases).

Two circuits have addressed the requirements in § 2675 post-*Arbaugh* and concluded that they are jurisdictional in nature. On facts similar to those here, the Third Circuit concluded that the United States' waiver of sovereign immunity is conditioned on the requirements in § 2675. *White-Squire v. United States Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). It noted that § 1346(b) is "[s]ubject to the provisions in chapter 171," which includes § 2675(a) and (b), containing the presentment and sum certain requirements. *Id.* Because they are "tethered" to § 1346(b), the Third Circuit concluded that the § 2675 requirements implicate the waiver of sovereign immunity by the United States and render the sum certain requirement jurisdictional. *Id.* at 457–58.

The Eighth Circuit issued a divided en banc opinion holding that the structure of the statute constitutes a Congressional expression of the jurisdictional nature of § 2675. *Mader v. United States*, 654 F.3d 794, 805–07 (8th Cir. 2011) (en banc). It noted the Supreme Court's recognition that "[t]he most natural reading of [§ 2675(a)] indicates that Congress intended to require *complete* exhaustion of Executive remedies *before invocation of the judicial process*." *Id.* at 807 (quoting *McNeil v. United States*, 508 U.S. 106, 112 (1993) (emphasis in *Mader*)). It acknowledged that the Supreme Court has cautioned about the drastic litigation consequences of indiscriminate use of the "jurisdictional" label for procedural rules. *Id.* at 806. But noting Supreme Court precedent and its intention to "strictly abide by the FTCA's language and

policy," the Eighth Circuit concluded that "although § 2675(a) may resemble a claim-processing rule, Congress has attached a jurisdictional label to the statute." *Id.* at 806–07.

The Supreme Court, however, has had more to say about the difficulty of divining the actual meaning of judicial references to jurisdiction. *Arbaugh* addressed "unrefined dispositions" in which courts dismiss for lack of jurisdiction "when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." 546 U.S. at 511 (quoting *DaSilva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000)). And it concluded that such "drive-by jurisdictional rulings" should have "no precedential effect" regarding "whether the federal court had authority to adjudicate the claim." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)).

With this in mind, we return to *McNeil*. It is true that *McNeil* was decided in 1993 and, in the intervening years, Congress has not amended § 2675 to clarify that the rule is not jurisdictional. In *McNeil*, however, the Supreme Court did not explicitly call the FTCA's exhaustion requirement jurisdictional, but instead characterized it as mandatory. 508 U.S. at 112 ("The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."). The district court dismissed McNeil's complaint due to lack of subject matter jurisdiction. *McNeil v. U.S. Public Health Serv.*, 89-c-1822, 1991 WL 9994, at *3 (N.D. Ill. Jan. 24, 1991). In affirming the district court, however, the Seventh Circuit did not even mention the word "jurisdiction." *McNeil v. United States*, 964 F.2d 647 (7th Cir. 1992). The jurisdictional nature of § 2675(a) was simply assumed by the Supreme Court in *McNeil*—it did not "explicitly consider[] whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh*, 546 U.S. at 511 (quoting *Da Silva*, 229 F.3d at 361). Accordingly, as we reevaluate the nature of § 2675 post-*Arbaugh*, *McNeil* should be granted no deference. And because the Supreme Court never spoke in explicitly jurisdictional terms in *McNeil*, Congress cannot reasonably be presumed to have acquiesced to the district court's interpretation.

What remains is to assess whether Congress clearly showed its intention to designate § 2675 a jurisdictional rule by placing it in chapter 171 and beginning § 1346(b)—the

jurisdictional grant—with the phrase "Subject to the provisions of chapter 171." *See White-Squire*, 592 F.3d at 456–57; *Mader*, 654 F.3d at 807. Context matters here. First, we know that "[m]ere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle." *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012). Section 2675 itself does not speak in jurisdictional terms, but rather in mandatory ones. And the Supreme Court "has long 'rejected the notion that all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.'" *Id.* (quoting *Henderson*, 562 U.S. at 439).

With this framing, we turn to the wording of the statute. The title of Chapter 171 is "Torts Claims Procedure," and it contains a number of rules, many of which are obviously claims-processing rules. For example, § 2679(c) requires that any federal employee who is named in an action under the FTCA notify the Attorney General and provide copies of the pleadings. Section 2672 requires, inter alia, that the government obtain approval from the Attorney General or his designee for awards over $25,000. Failure to fulfill these procedural obligations would not deprive the federal courts of jurisdiction over the dispute, even though § 1346(b)'s grant of jurisdiction is technically "subject to" those provisions. The content and language of this provision does not evidence clear Congressional intent to designate § 2675 a jurisdictional rule based on its placement in the statutory scheme.

In summary, neither governing precedent nor the structure of the statute support the conclusion that Congress has plainly attached a jurisdictional label to the sum certain requirement in § 2675(b). The reference to chapter 171 in § 1346(b) is simply not clear enough to "turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle." *Thaler*, 565 U.S. at 147. We conclude that the sum certain requirement is a mandatory claims-processing rule.

### 2. Compliance with § 2675

Review of whether the Copens have complied with § 2675's requirements begins with the principles animating the FTCA—efficiency and fairness. "The compulsory administrative claims procedure in the amended FTCA was established to reduce congestion of federal courts' dockets and to speed fair treatment of those asserting claims against the federal government."

*Douglas v. United States*, 658 F.2d 445, 447 (6th Cir. 1981).  The purpose of the agency notice requirement is to give the agencies "a fair opportunity to investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation." *McNeil*, 508 U.S. at 111–12.

Federal courts have noted that Congress did not intend for the procedural requirements in the FTCA "to place procedural hurdles before potential litigants" but rather "to facilitate early dispositions of claims." *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999) (citing *Lopez v. United States*, 758 F.2d 806, 809 (1st Cir. 1985) ("[I]ndividuals wishing to sue the government must comply with the details of [section 2675], but . . . the law was not intended to put up a barrier of technicalities to defeat their claims.")).  And federal cases have observed "judicial unwillingness to permit the United States to stand on technicalities once a claim has been filed." *Locke v. United States*, 351 F. Supp. 185, 187 (D. Haw. 1972).  In line with this reasoning, the Fifth and Eleventh Circuits have "taken a somewhat lenient approach to the 'sum certain' requirement[,] holding, for example, that even where a claimant had not specifically stated the value of the claim, attaching medical bills and repair estimates to the claim notice could suffice." *Tidd v. United States*, 786 F.2d 1565, 1567 n.6 (11th Cir. 1986) (citing *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975); *Wardsworth v. United States*, 721 F.2d 503, 505–06 (5th Cir. 1983)).

We have concluded that "[a] claim submitted to the proper administrative agency is considered sufficient to satisfy the exhaustion requirement if it is a 'written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death.'" *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) (quoting *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) (per curiam)).  The requirement of a sum certain, "while technical, is a prerequisite for filing a FTCA claim in this circuit." *Glarner v. United States Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994); *see also Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989) (per curiam); *Douglas*, 658 F.2d at 447.  Therefore, the sum certain must be specified.

Our cases explain how that requirement may be satisfied.  In *Allen v. United States*, we found no indication that the plaintiff had attempted to provide a sum certain for personal injury

damages before the limitations period ran. 517 F.2d 1328, 1329–30 (6th Cir. 1975) (per curiam). Subsequent cases have examined whether plaintiffs provided a sum certain in follow up communication with the agency. In *Zuber v. United States*, No. 99-1846, 2000 WL 1276895, at *2 (6th Cir. Aug. 30, 2000), we considered the plaintiff's argument that she had adequately apprised the agency of her damages claims in letters and phone conversations. We examined her evidence but found that none of the communications contained a specific figure. More recently, we entertained a claimant's contention that she had presented a sum certain with her claim, albeit to the wrong agency. *Jones v. Johnson*, 707 F. App'x 321, 331–32 (6th Cir. 2017). Again, we examined the evidence and concluded that the claimant had not provided that sum certain in any form. These cases show that the sum certain can be provided in ways other than on the SF 95, which aligns with the Government's explanation that the SF 95 form is "not required to present a claim under the FTCA." DEP'T OF JUSTICE, DOCUMENTS AND FORMS, *supra*.

The Copens argue that the information provided on Kelly Copen's claim form was sufficient to put the Government on notice of her claim. In a note attached to her initial claim form, Kelly stated that she did not have damages figures yet, either for damage to her vehicle or for personal injury. She subsequently provided USPS with a total for her vehicle repair and rental car expenses and USPS paid her the property damage claim. However, neither she nor her attorney provided a total for personal injury, even after receiving a letter from USPS saying that a dollar figure is necessary for the processing of the claim. Under our precedent, the damages amount need not be provided on the initial claim if it is furnished to the agency within the limitations period. The problem for the Copens is that the record does not show that they provided anything from which a dollar figure for personal injury damages could be extracted.

The fact that Kelly provided a sum certain for her property damage claim cannot rescue her personal injury claim. In *Allen*, a factually similar case, we affirmed a dismissal where a claimant filed an initial SF 95 that contained a sum certain for property damage but no sum certain for personal injury. *Allen*, 517 F.2d at 1328. In his initial submission, the claimant stated: "[d]ue to the time limits involved here, we are unable to get clearance from the doctors involved to get the entire claim filed properly." *Id.* After the two-year limitations period passed, the claimant filed another SF 95, this time with sum certain figures for both claims. *Id.* After

this second claim was denied as untimely, Allen filed suit only on the personal injury claim. *Id.* at 1329. We held that the second form was untimely, and that the first form could not be considered a valid claim for personal injury damages because it contained no sum certain for that claim. *Id.* at 1329–30. Therefore, because Kelly never provided a sum certain for her personal injury, her personal injury claim is not cognizable.

On Paul Copen's claim, the Government argues that because he did not file a separate form, he failed to file an administrative claim. But the Copens are correct that the SF 95 is not itself required to initiate an FTCA claim. The agency must be furnished with notice, which can come in a form other than the SF 95: "[i]f the claimant completes the SF95, he will satisfy [the FTCA's] requirements, though that particular form is not necessary for doing so." *Glarner*, 30 F.3d at 700. Cases reveal the hesitancy of courts to have claims fail for lack of individual forms. *See Locke*, 351 F. Supp. at 187–88 (allowing a claim to proceed as to children not listed as claimants on father's administrative claim form); *see also Champagne v. United States*, 573 F. Supp. 488, 493 (E.D. La. 1983) ("Neither the statute nor the regulations specifically require a separate form for each claimant."). Thus, courts have authorized flexibility with the formalities of filing, as long as the agency receives notice.

We have done so. In *Rucker v. United States Dep't of Labor*, 798 F.2d 891, 893 (6th Cir. 1986), we stated that "identifying a claimant's wife on a Standard Form 95, *without more*, is not sufficient to fulfill the jurisdictional requirement of 28 U.S.C. § 2675(a)." *Id.* (emphasis added). Examining the record here shows that there *was* more information on the Copens' SF 95 as to Paul. He was specifically named, though not in the box labeled "Claimant." The Copens' SF 95 noted that Paul Copen had been involved in the accident, that he had gone to Aultman Hospital, and that the extent of his injuries was yet to be determined. The district court analogized this case to *Metheney v. United States*, No. 16-cv-2398, 2017 WL 2105303 (N.D. Ohio May 12, 2017). But in *Metheney*, plaintiffs conceded that the claimant's husband was "not even identified as Plaintiff['s] . . . . husband on the Standard Form 95," which was insufficient to put the Government on notice of his loss of consortium claim. *Id.* at *2.

USPS treated Kelly Copen's claim for damage to her vehicle as properly presented and paid the claim. The Government treated her personal injury claim as defective only because it

lacked a sum certain. As to notice, exactly the same information was presented on the form for Paul Copen and Kelly Copen. They are both listed as being involved in the accident and Paul is listed as the driver. The form indicates both were injured in the accident, and that Paul was taken to the hospital. Given that the animating principle of the administrative claim procedures is to ensure the agency has adequate notice of the claim, Paul's presence on the form and status as a party whose injury and treatment was reported to the Government meets this requirement. At issue, however, is that Paul's claim also lacks a sum certain as to the personal injury damages. As a result, neither Paul nor Kelly have complied with the mandatory requirements of § 2675.

### III. CONCLUSION

Because we hold that the sum certain requirement in § 2675 is not jurisdictional, we REMAND to the district court for further proceedings consistent with this opinion. Because the district court has jurisdiction, on remand it should consider any arguments the parties may have under Fed. R. Civ. P. 12(b)(6) rather than 12(b)(1).

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

ROGERS, Circuit Judge, concurring in part and dissenting in part.

I join Part I and Part II.B.2 and would affirm the judgment of the district court dismissing the suit for failure to meet the agency presentment and sum certain requirement of 28 U.S.C. § 2675. Because the resolution of the appeal does not in any respect turn on the characterization of that provision as either jurisdictional or non-jurisdictional, the discussion of that characterization issue is not only unnecessary, but also advisory dictum, not binding on future panels of this court.

Until we requested supplemental briefing on the characterization issue, neither party had addressed it as a contested issue. Even now there is no suggestion—none at all—as to how the characterization question affects the interests of the parties in this case.[1] There is no question of government forfeiture or waiver of the agency presentment/sum certain requirement, no question of equitable tolling, and no indication that any procedure used by the district court in addressing the agency presentation question would be different depending on whether the issue is jurisdictional or not. There is moreover no indication how the res judicata effect of dismissal would be more than very formally different based on the characterization question, and even if it is, that can be litigated when the res judicata issue arises. In short, if the parties actually have some stake in the characterization issue, we presently have no clue what that stake is.

Under such circumstances, the majority's resolution of the characterization issue is not, under clear Supreme Court precedent, binding on future panels of this court. In *Arbaugh v. Y & H Corp.*, the Supreme Court explained why it was not bound by its previous use of the word "jurisdictional" in an earlier case dealing with the same statute:

---

[1]In response, the majority refers only vaguely to "any arguments the parties may raise" on remand. Maj. Op. 2, fn. 1.

In *Arabian American Oil Co.*, we affirmed the judgment of the courts below that Title VII, as then composed, did not apply to a suit by a United States employee working abroad for a United States employer. That judgment had been placed under a lack of subject-matter jurisdiction label. We agreed with the lower courts' view of the limited geographical reach of the statute. *En passant*, we copied the petitioners' characterizations of terms included in Title VII's "Definitions" section as "jurisdictional." But our decision did not turn on that characterization, and the parties did not cross swords over it. *See Steel Co.*[*v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)], (declining to follow a decision treating an issue as jurisdictional because nothing "*turned upon* whether [the issue] was technically jurisdictional" in that case). In short, we were not prompted in *Arabian American Oil Co.* to home in on whether the dismissal had been properly based on the absence of subject-matter jurisdiction rather than on the plaintiff's failure to state a claim.

546 U.S. 500, 512–13 (2006) (citations omitted). The emphasis on the words "*turned upon*" is contained in both the *Steel Co.* and *Arbaugh* opinions. The Court's rejection in *Steel Co.* of a jurisdictional characterization from earlier cases just as explicitly relied upon the fact that the characterization did not resolve anything of substance:

The short of the matter is that the jurisdictional character of the elements of the cause of action in *Gwaltney* made no substantive difference (nor even any procedural difference that the Court seemed aware of), had been assumed by the parties, and was assumed without discussion by the Court. We have often said that drive-by jurisdictional rulings of this sort (if *Gwaltney* can even be called a ruling on the point rather than a dictum) have no precedential effect.

*Steel Co.*, 523 U.S. at 91.

Our discussion regarding the characterization issue in the case before us is exactly like the cases deemed by the Supreme Court to have no precedential effect. The only difference is the extent of discussion by the court. But the extent of discussion does not determine whether a ruling is holding or dictum. Stated in the terms of the Supreme Court's more colorful argot, a drive-by ruling lacks precedential effect even if it is carefully supported, just as a drive-by shooting is still "drive-by" even if the car slows down and the shooter aims carefully. The fact that the disposition was "unrefined," in short, may be descriptive of many drive-by jurisdictional rulings, but it is the irrelevance of the characterization in the preceding cases that deprives them of precedential effect.

Moreover, the rejection of assumed jurisdiction in *Steel Co.* does not require us to address the characterization issue. *Steel Co.* held that federal courts cannot resolve a case by skipping a jurisdictional issue and ruling for a defendant on the merits, whether or not the court would have determined that it lacked jurisdiction. 523 U.S. at 93–102. In *Steel Co.*, the jurisdictional issue—redressability and Article III standing—was entirely distinct from the merits issue, which involved timeliness of certain motions under the organic act. *Id.* at 88–90, 105. If the court decided the merits issue first, it might be ruling on the merits without Article III jurisdiction. This is not possible, however, where there is only a unitary threshold issue, decided at the same point in the litigation, the resolution of which will affect the parties identically either way. At no point in time is it possible that there was a merits issue decided without jurisdiction. If later on it is determined for some presently unanticipated purpose that the dismissal had to have been jurisdictional, then by the same token the dismissal will not have been on the merits.[2]

*Steel Co.* and *Arbaugh* thus compel the conclusion that the majority's ruling regarding the characterization issue in this case lacks precedential effect. We should accordingly decline to rule on the characterization issue. Ruling on the issue violates all the reasons for eschewing dictum, which Judge Leval has so compellingly laid out in his iconic lecture. Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1255–56, 1261–63 (2006). The issue should not be decided in a case—like this one—where the issue makes no real difference to the parties and has not been vigorously litigated, where further review would be stymied by an absence of incentive to appeal, and where the "decision" on the issue is likely nonbinding dictum anyway. Instead, the issue should be decided in a case where its resolution has an effect on the interests of the parties, the parties care enough about the issue to litigate it properly, the losing party would have incentive to appeal the decision, and the decision will bind litigants in those future cases where the issue makes a difference.

---

[2]Indeed, the Court in *Steel Co.* distinguished *Norton v. Mathews*, 427 U.S. 524 (1976), a case in which the Court declined to decide a jurisdictional question because the merits question was decided in a companion case and, accordingly, the jurisdictional question could have no effect on the outcome. *Steel Co.*, 523 U.S. at 98. This distinction was a tip of the hat toward avoiding dictum. *Norton* was different from *Steel Co.*, said the Court, because "*Norton* did not use the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Id.* Our case is even more different from *Steel Co.* than *Norton* was. Our case does not involve avoiding a jurisdictional question because the merits question has been resolved in a companion case, as in *Norton*. Instead, there is no further question of law for us to reach, because the purported jurisdictional issue is identical to the purported merits issue. The labeling question is not at issue at all.

If the characterization issue in this case were open-and-shut, the use of dictum should still be avoided, but the harm inherent in the use of dictum would be less. But the issue is far from open-and-shut. The Third and Eighth Circuits have ruled in thoughtful post-*Arbaugh* opinions that the agency presentation requirement is jurisdictional. *White-Squire v. United States Postal Service*, 592 F.3d 453, 457 (3d Cir. 2010); *Mader v. United States*, 654 F.3d 794, 805–07 (8th Cir. 2011) (en banc).

Sovereign immunity principles at stake in the Federal Torts Claims Act are driven by separation-of-powers concerns that go beyond merely preserving congressional power to govern federal court jurisdiction. Modern sovereign doctrine preserves the power of Congress to control the public fisc, and accordingly requires a very explicit grant for the courts to have the power to order the federal government to pay damages. The Executive Branch accordingly cannot waive restrictions that are fairly considered to be limits on the waiver of sovereign immunity. We should be wary of granting such power to the Executive Branch by characterizing Federal Tort Claims Act limitations as non-jurisdictional and thus subject to Executive Branch waiver.[3] If we are going to do so, it should be in a case where it is clear what the stakes are in making such a decision.

---

[3]It is true that in *United States v. Wong*, 575 U.S. 402, 410 (2015), the Supreme Court concluded that the FTCA's statute of limitations in 28 U.S.C. § 2401(b) was not a jurisdictional requirement. In reaching this conclusion, the Court reasoned that § 2401(b), housed in section 161 of title 28, is separated from the jurisdictional grant in § 1346(b)(1). *Id.* at 411. The Court noted: "Nothing conditions the jurisdictional grant on the limitations period, or otherwise links those separate provisions. Treating § 2401(b)'s time bars as jurisdictional would thus disregard the structural divide built into the statute." *Id.* at 412. Here, the jurisdictional grant in § 1346(b)(1) provides the link by conditioning jurisdiction on the provisions of chapter 171 of Title 28, which contains § 2675(a).