**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0529n.06

**Case No. 16-4751**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ANNETTE EHRLICH, | ) | **FILED**<br>Sep 14, 2017<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| *Plaintiff-Appellant*, | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE NORTHERN |
| MICHAEL KOVACK, Individually and in his | ) | DISTRICT OF OHIO |
| official capacity; JOAN HELLER; MEDINA | ) |  |
| COUNTY, OHIO; MEDINA COUNTY, OHIO | ) |  |
| COMMISSIONERS | ) |  |
|  | ) | O P I N I O N |
| *Defendants-Appellees*. |  |  |

BEFORE: COLE, Chief Judge; BATCHELDER and MOORE, Circuit Judges.

COLE, Chief Judge. Annette Ehrlich filed a complaint against Michael Kovack; Joan Heller; Medina County, Ohio; and the Medina County, Ohio Commissioners pursuant to 42 U.S.C. § 1983. The complaint alleged that the defendants terminated Ehrlich's employment in violation of her First Amendment right to free speech. The district court granted summary judgment to Kovack, the only remaining defendant on Ehrlich's First Amendment claim, and declined to exercise supplemental jurisdiction over Ehrlich's state-law claims. Ehrlich appeals the grant of summary judgment and two related denials of requested discovery. We affirm.

## I. BACKGROUND

Ehrlich worked at the Medina County Auditor's Office ("Auditor's Office") as a network administrator. Michael Kovack holds the elected position of Auditor of Medina County and Joan Heller served as his deputy.

Ehrlich requested permission to attend a computer training session related to a program known as Pictometry. Kovack denied her request because he did not believe her attendance would be beneficial to her work as an administrator. Ehrlich then emailed Kovack and Heller informing them that she intended to take a vacation day to attend the training. She wrote:

> I will be taking vacation to attend this training that I helped set up. I am unsure why you are so vehemently adamant that I be banned from this training. This has happened before with pricing in MVP. I was denied the opportunity for training right here at our office but then I had to answer pricing questions first from Kathy who had the training and then from Jim. In fact, he was asking me questions about pricing just this week.

Heller considered the email to be an act of insubordination and recommended that Kovack take disciplinary action against Ehrlich and deny her requested vacation.

Heller advised Ehrlich by letter of Kovack's intent to discipline her for insubordination. The letter informed Ehrlich that insubordination is classified as a Category 3 offense and could result in a three-day suspension. The letter further noted that Ehrlich's conduct violated the Rules of Conduct of the Auditor's Policy and Procedure Manual, which delineates the rules of conduct for the Auditor's Office. The manual, however, actually states that Category 3 offenses are subject to termination of employment on the first offense.

Prior to Ehrlich's receiving Heller's letter, she delivered Kovack a letter stating that she had discovered his allegedly inappropriate use of the office printer for his campaign events. The letter discussed a number of issues, including Ehrlich's frustration at not being allowed to attend the training, her concerns that Heller's and Kovack's actions were creating a hostile work

environment, and her investigation into the print logs which showed Kovack's campaign-related use of the county printer. As related to the campaign, the letter said:

> I also wanted to point out that in February, through checking of the print logs on the print server, which I do regularly to make sure the printers are working properly, I noticed that you were printing your Chili Cook-off campaign literature from the printers here in the office. I have been so upset over it and I don't know how to address it considering how I have been treated by both you and Joan [Heller]. I constantly fear for my job and so I did not disclose this to anyone. However, I believe it is wrong to do that. This must be addressed, as this knowledge is causing me so much emotional distress.

(Ex. C, Ehrlich Dep., R. 89-1, PageID 1899.)

A disciplinary hearing was held in March and was attended by Heller, Kovack, and Lisa Nichols, Ehrlich's direct supervisor. Either Heller, Kovack, or Nichols suggested that Ehrlich contact an employee assistance program for help in managing her stress. Heller stated that Ehrlich threw the signed hearing notification at her during the meeting. Kovack confirmed this incident. Ehrlich also sent a letter to the sheriff's office notifying it of Kovack's purported use of the printers for his election campaign.

Kovack issued Ehrlich a written reprimand that would be expunged from her personnel file after six months as punishment for the email she sent Kovack regarding the training. Kovack also formed a three-member committee to look into Ehrlich's claim that she worked in a hostile work environment. The committee concluded that Ehrlich had not been subjected to a hostile work environment. Kovack also notified the sheriff of Ehrlich's allegations.

In June 2014, Kovack contacted Mike Warner, a computer technician in Medina, to discuss possible instability in information technology personnel at the Auditor's Office.

In July 2014, Ehrlich took leave under the Family Medical Leave Act. Ehrlich was to return to work on August 25, 2014, but Kovack placed her on paid administrative leave prior to her return. Kovack's stated reason for doing so was to "allow [the Auditor's Office] to complete

preparations for [her] return." (Ex. 29, Kovack Dep., R. 88-1, PageID 1420.) Kovack testified that leaks of information from the Auditor's Office concerned him and he wanted to limit Ehrlich's access to the computer system before she returned. Kovack extended Ehrlich's administrative leave on August 29, 2014, citing concerns about Ehrlich's access to the data center and the Auditor's Office network.

Kovack asked Ehrlich to attend a meeting on September 5, 2014, to discuss his concerns about the information leaks. Kovack said that at the meeting Ehrlich admitted to providing information from the Auditor's Office to Commissioner Pat Geissman, a political opponent of Kovack's. After the meeting, Ehrlich remained on administrative leave but was not given a date to return to work.

On September 17, 2014, a reporter contacted Ehrlich. The reporter had spoken with Heller and had reviewed Ehrlich's personnel file, which stated that Heller was afraid of Ehrlich.

On September 18, 2014, while still on administrative leave, Ehrlich went to the Auditor's Office with her dog to obtain her personnel file. Heller testified that Ehrlich's behavior was "out of control" and that she was loud and disruptive. (Heller Dep., R. 90-1, PageID 2130.) Fifteen witnesses prepared statements regarding the incident. Most of the witnesses testified that Ehrlich's behavior was inappropriate and threatening. Ehrlich denies this characterization.

Kovack reviewed the witness statements and determined that Ehrlich's actions necessitated discipline. He sent a pre-disciplinary hearing letter to Ehrlich on September 19, 2014, and set the hearing for September 25, 2014. In the letter, Kovack described Ehrlich's conduct at the Auditor's Office as a Category 3 offense which potentially could result in termination of employment. After the hearing, Kovack terminated Ehrlich's employment at the Auditor's Office.

Ehrlich then filed this lawsuit, setting forth four state-law claims and the instant First Amendment retaliation claim. The district court granted judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure to all of the defendants, except Kovack in his individual capacity as to the First Amendment claim. The district court then granted summary judgment to Kovack on the First Amendment claim and declined to exercise supplemental jurisdiction over the state law claims.

Ehrlich appeals the grant of summary judgment in favor of Kovack. She also appeals two of the district court's discovery decisions: (1) the district court's denial of Ehrlich's Motion to Compel Discovery relating to the production of Kovack's and Heller's Auditor's Office computer hard drives and (2) the order prohibiting the questioning of Kovack regarding evidence in his sealed criminal record.

## II. ANALYSIS

### A. Summary Judgment Standard

We review a summary judgment determination de novo. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute is "genuine" only if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**B. First Amendment Retaliation Claim**

"The First Amendment prohibits retaliation by a public employer against an employee on the basis of certain instances of protected speech by the employee." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). "In a First Amendment retaliation claim, we must consider whether the alleged adverse employment action 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007)). A termination from employment is the quintessential example of an adverse employment action. *Id.*

A prima facie case for a First Amendment retaliation claim raised through a 42 U.S.C. § 1983 action has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "This inquiry is intensely context-driven: '[a]lthough the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 388).

Ehrlich argues that the March 18, 2014 letter she sent to Kovack and Heller and the March letter to the sheriff's office constitute protected speech. She also argues that her termination and her being placed on administrative leave constitute adverse actions. Our precedents make clear that termination is an adverse employment action, but we have previously found that being placed on paid administrative leave while an investigation is conducted into

- 6 -

suspected wrongdoing is not an adverse action. *See Harris v. Detroit Pub. Sch.*, 245 F. App'x 437, 443 (6th Cir. 2007); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004).

We focus on causation, the third element in a First Amendment retaliation claim, because failure to establish any element of a prima facie retaliation case results in the failure of that claim. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (holding that failure to establish causation supported the grant of summary judgment for the defendant). To establish causation, a plaintiff must demonstrate that her protected speech is "a substantial or motivating factor" of the adverse action. *Id.* at 400 (quoting *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003)). This inquiry is "essentially but-for cause." *Id.* (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)). We have adopted a burden-shifting framework for this part of the analysis. *Id.* Under this framework, once the plaintiff has met her initial burden of demonstrating that her speech was a substantial or motivating factor of the adverse action, the burden shifts to the defendant to show that he would have taken the same action absent the protected speech. *Id.* A plaintiff can meet her initial burden through direct evidence or circumstantial evidence such as temporal proximity. *Thaddeus-X*, 175 F.3d at 399. Although our cases recognize "the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, . . . often evidence in addition to temporal proximity is required to permit the inference." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). In fact, "we have rarely found a retaliatory motive based only on temporal proximity." *Id.* at 401; *see, e.g.*, *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (finding a four-month gap between a protected action and an adverse action insufficient to establish causation without other indicia of retaliatory conduct).

The district court found that the approximately six months between the letters and the adverse action "[was] on the outer edges with regard to temporal proximity." (Mem. Op. & Order, R. 113, PageID 3164.) To establish her initial burden on causation, Ehrlich points to temporal proximity as well as intervening incidents such as her March disciplinary action, that Kovack was attempting to replace her as early as June, and her placement on administrative leave. (Ehrlich Br. 25–27.)

The district court concluded that Ehrlich failed to establish a prima facie case. It found that the intervening incidents were not indicia of retaliatory conduct and that the temporal proximity alone was not enough to demonstrate but-for causation. It further determined that Kovack had an unrelated reason to terminate Ehrlich's employment in September because of the disturbance she caused at the Auditor's Office while on administrative leave.

We agree with the district court that Ehrlich did not produce evidence sufficient to establish that her protected speech was a motivating factor for her termination. First, the district court correctly found that the evidence does not support Ehrlich's contention that Kovack tried to replace her shortly after her protected speech. On appeal, Ehrlich argues an email that Warner sent Kovack indicates Kovack had already planned to fire Ehrlich. This email plainly does not support this contention. Rather, it supports the deposition testimony of Kovack who stated that he believed that Ehrlich might leave the Auditor's Office based on her complaints of a hostile work environment. Kovack also specifically stated that he had no plans to fire Ehrlich in June.

Ehrlich further argues that Kovack's disciplinary action in March constitutes evidence that Kovack terminated her because of her protected speech. While the March disciplinary decision occurred after Ehrlich engaged in protected speech, Heller had drafted the pre-disciplinary hearing letter prior to Ehrlich's speech and Ehrlich actually received a more lenient

punishment for her insubordination than allowed for in the policy. This is not evidence of causation.

Finally, Ehrlich claims that her placement on administrative leave in August establishes but-for causation. However, there is no dispute that Ehrlich improperly leaked information from the Auditor's Office, which is the reason Kovack placed her on administrative leave.

Even if Ehrlich had established a prima facie case, Kovack established through substantial evidence that he would have terminated Ehrlich's employment in September absent her protected speech. Kovack has presented evidence that Ehrlich's behavior on September 18, 2014, was in and of itself a sufficient independent reason to terminate Ehrlich's employment. Ehrlich criticizes the evidence, but she identifies no counter-evidence sufficient to create a genuine dispute of material fact. Indeed, Ehrlich agrees that she went to the Auditor's Office with her dog on September 18th and engaged in a heated exchange with Heller. That conduct alone is sufficient to constitute a Category 3 offense. Moreover, Ehrlich's objections to certain employee statements do not create a genuine dispute of material fact. Despite some factual differences among the employees, each individual described Ehrlich's conduct as loud or threatening and each individual submitted an affidavit stating that Ehrlich's conduct constituted a Category 3 violation. In this case, no jury would return a verdict in Ehrlich's favor because Kovack presented evidence that Ehrlich engaged in terminable behavior and Ehrlich has not identified any counter-evidence. *See Anderson,* 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

Because Ehrlich has failed to establish a prima facie case for First Amendment retaliation claim, we affirm the district court's grant of summary judgment.

## C. Discovery Decisions

Ehrlich appeals two of the district court's discovery decisions: (1) denial of her request to access Kovack's and Heller's complete computer hard drives and (2) denial of her request to question Kovack "regarding [his] criminal charges." (Ehrlich Br. 36.)

We review limits or denials of discovery under an abuse of discretion standard. *See Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (internal quotation marks omitted).

As to the hard drives, the district court found that the request was overly broad and "any failure on the part of defendants to comply with plaintiff's discovery requests does not rise to the level of necessitating production of the entire hard drives." (Order, R. 86, PageID 1050.) The scope of discovery is "within the sound discretion of the [district] court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). Ehrlich does not argue that she needed the entire hard drives, but rather that the parties were unable to agree on what files should be produced. (Ehrlich Br. 40–41.) The district court did not abuse its discretion in determining under these circumstances that Ehrlich's request for the complete hard drives was overly broad.

The district court held that Ehrlich was not permitted to "question defendants regarding any record contained in the Sheriff's file that has been sealed." (Order, R. 86, PageID 1052.) Kovack's records were sealed in accordance with Ohio state law. *See* Ohio Rev. Code Ann. § 2953.52(A). The protection this section affords may be waived, but the district court found that Kovack had not waived that protection when he publicly disclosed some of the information

on his blog. The district court did not abuse its discretion in denying Ehrlich's request to question Kovack on the sealed records. We, therefore, affirm as to the discovery claims.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment and denial of Ehrlich's discovery requests.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I write separately because I believe that the evidence establishes a genuine dispute of material facts as to Ehrlich's First Amendment retaliation claim. I therefore respectfully dissent from the majority's analysis in section II.B.

We will uphold a district court's grant of summary judgment only if "no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *Jackson v. VHS Detroit Receiving Hosp., Inc*., 814 F.3d 769, 775 (6th Cir. 2016); Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp*., 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). In reviewing the evidence under Rule 56(a), "we view the evidence, 'and all inferences drawn therefrom, in the light most favorable to the non-moving party.'" *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (quoting *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000)). Summary judgment must not be granted if the party against whom the motion is made has produced evidence "such that a reasonable jury could return a verdict" in her favor. *Id*. The ultimate question on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson*, 477 U.S. at 251–52).

The majority correctly notes initially that a prima facie case of First Amendment retaliation "has three elements: '(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) 'the adverse action was motivated at least in part by the plaintiff's protected conduct.'" Maj. Op. at 7 (quoting *Thaddeus-X v. Blatter*, 175 F.3d

378, 394 (6th Cir. 1999) (en banc)). If the plaintiff meets her burden, the burden shifts to the defendant to demonstrate that he would have taken the same action absent the plaintiff's protected speech. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010).

The majority focuses its analysis on the third element of the prima facie case "because failure to establish any element of a prima facie retaliation case results in the failure of that claim." Maj. Op. at 7 (citing *Vereecke*, 609 F.3d at 403). In this regard, *Thaddeus-X*'s third element bears emphasis—that "the adverse action was motivated *at least in part* by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394 (emphasis added). In concluding that summary judgment should be granted for Kovack, the majority overlooks critical disputes of material fact regarding both whether Ehrlich established that her protected speech was a motivating factor for her termination and whether Kovack produced undisputed evidence that he would have terminated Ehrlich's employment absent her protected speech.

The record contains evidence sufficient to create a material factual dispute regarding the motivation behind Kovack's firing of Ehrlich. Ehrlich first points to the fact that she was disciplined by Kovack for informing Kovack that she intended to take a vacation day so that she could attend a training seminar. This is material to the question of causation because it occurred after Ehrlich provided to Kovack, the sheriff, and others, information about Kovack's potential criminal activity. Ehrlich also adduced evidence that suggests her speech in 2014 bothered Kovack so much that he was considering replacing her. Additionally, Ehrlich placed in the record evidence that shows Kovack's shifting motivations for placing Ehrlich on administrative leave. This evidence suffices to present a dispute on the material issue of causation. I would therefore conclude that a grant of summary judgment for Kovack based on the causation element of Ehrlich's prima facie case is improper.

I also believe that there exists a dispute of material fact regarding whether Kovack would have terminated Ehrlich's employment in September absent her protected speech. True, several individuals indicated that Ehrlich's behavior in the office on September 18 was threatening, insubordinate, and offensive. But because we are reviewing a summary-judgment motion, we must draw all inferences in favor of the non-moving party, and assume that Ehrlich's factual allegations are true. Ehrlich testified at her deposition that the statements of employees claiming to be scared by her alleged behavior on September 18 constituted "lies" and that the employees' statements were "untrue." R. 89 (Ehrlich Dep. at 133) (Page ID #1673). Ehrlich's deposition testimony, even in light of other employees' statements to the contrary, is sufficient to preclude summary judgment on the question of whether Ehrlich's actions on September 18 independently justified her termination. A fact-finder should weigh the competing testimony, judge credibility, and find the facts regarding the reason for Ehrlich's termination—not this court. Therefore, I conclude that summary judgment cannot be granted on the issue of whether Kovack would have terminated Ehrlich's employment absent her protected speech.

Because I believe that the material factual disputes present in this case preclude a grant of summary judgment, I would reverse the judgment of the district court. The factual issues surrounding the circumstances of Ehrlich's termination should be dissected at a trial, not by an appellate court on summary-judgment review. For those reasons, I respectfully dissent from section II.B. of the majority opinion.