RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0168p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JALEELAH HASSAN AHMED,

　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

HAMTRAMCK PUBLIC SCHOOLS; EVAN MAJOR;
SALAH HADWAN; MOORTADHA OBAID; SHOWCAT
CHOWDHURY; REGAN WATSON; HAMTRAMCK
FEDERATION OF TEACHERS,

　　　　　　　　*Defendants-Appellees*.

⎤
⎟
⎟
⎟
⎟
⎟
⎬　　No. 24-1775
⎟
⎟
⎟
⎟
⎟
⎦

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11127—Gershwin A. Drain, District Judge.

Argued: April 23, 2026

Decided and Filed: June 15, 2026

Before: SILER, MOORE, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Eric Delaporte, DELAPORTE LYNCH, PLLC, Mason, Michigan, for Appellant. Anne-Marie Vecruysse Welch, CLARK HILL PLC, Birmingham, Michigan, for Appellees Hamtramck Public Schools, Evan Major, Salah Hadwan, Moortadha Obaid, Showcat Chowdhury, and Regan Watson. **ON BRIEF:** Eric Delaporte, DELAPORTE LYNCH, PLLC, Mason, Michigan, for Appellant. Anne-Marie Vecruysse Welch, Stephanie V. Romero, CLARK HILL PLC, Birmingham, Michigan, for Appellees Hamtramck Public Schools, Evan Major, Salah Hadwan, Moortadha Obaid, Showcat Chowdhury, and Regan Watson. Mark H. Cousens, COUSENS LAW, West Bloomfield, Michigan, for Appellee Hamtramck Federation of Teachers. Andrew G. Braniff, Yael Bortnick, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

BLOOMEKATZ, Circuit Judge.   During the COVID-19 pandemic, Jaleelah Hassan Ahmed, the Superintendent of Hamtramck Public Schools, took voluntary medical leave for three months.   When she was preparing to return from leave, the Hamtramck School District informed her that she was prohibited from returning while it investigated her alleged misconduct. While on paid administrative leave, Ahmed sued the Hamtramck Federation of Teachers, five members of the Hamtramck School Board, and the Hamtramck School District, asserting numerous claims including disability, sex, and national origin discrimination. Ahmed tried to amend her complaint multiple times, but each attempt failed.   After the district court denied Ahmed leave to file her Fourth Amended Complaint, the defendants moved to dismiss the claims against them from her original complaint.   The district court granted the motions to dismiss, and Ahmed appealed.   She challenges the denial of her motion for leave to file a Fourth Amended Complaint as well as the district court's subsequent grant of the motions to dismiss.

The district court erred in denying Ahmed leave to file a Fourth Amended Complaint, so we need not reach her challenge to the dismissal of the original complaint.   We reverse and remand for further proceedings consistent with this opinion.

**BACKGROUND**

I.   **Factual History**

Because this appeal comes before the panel on a motion for leave to amend, we recite the facts as they appear in Ahmed's Fourth Amended Complaint.

In 2016, Hamtramck School District hired Ahmed as its English Language Development Director.   Three years later, the District appointed her as Superintendent.   After she received two years of highly effective ratings, the District renewed her contract as Superintendent for another three years.   The terms of her contract included authority to assign and reassign staff in ways that

"in her judgment, best served the School District" and protection against termination except for just cause.  Fourth Am. Compl., R. 68, ¶ 28; Contract, R. 89-1, PageID 2668–69.

Ahmed alleged that the problems underlying this case began during the COVID-19 pandemic.  As teachers all over Michigan retired early due to the pandemic, Hamtramck teachers left to take "more desirable" jobs in other school districts.  Fourth Am. Compl., R. 68, ¶¶ 30–31.  Ahmed therefore exercised her contractual reassignment power to involuntarily transfer nine teachers before the start of the 2021–22 school year.  She made the transfers to "improve the academic achievement of School District students."  *Id.* ¶ 37.  She alleged that, in response to the transfer decisions, Hamtramck Federation of Teachers (the Union) and five Hamtramck School Board members conspired to terminate her employment unless she acquiesced to their policy demands.  Ahmed then transferred involuntarily two more teachers, so "teachers who were properly certified under federal and Michigan law" could serve the greater-than-expected enrollment of autistic students at a particular elementary school.  *Id.* ¶¶ 49–50.  In furtherance of the conspiracy with the Union, the Board members refused to approve the involuntary transfers.

According to Ahmed, the conspiracy combined with the ongoing pandemic caused her "severe emotional distress."  *Id.* ¶ 53.  On the advice of her physician, Ahmed took a temporary medical leave of absence under the Family and Medical Leave Act (FMLA) from October 2021 to January 2022.  When she began her leave, the alleged conspirators, through the newly appointed Acting Superintendents, prohibited her from taking official actions or communicating with school employees.  They also terminated her access to computer systems and removed her from the website.

Toward the end of the three months of leave, Ahmed notified the District of her planned return.  A few days before her return date, the Board president emailed Ahmed to "inform her she was prohibited from returning to work" and that she was on a paid leave of absence "pending investigation into alleged misconduct."  *Id.* ¶ 64.  The email asked her to return certain items and to collect her personal effects from her office.

In early January, Ahmed allegedly began filing charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and Department of Labor (DOL), asserting

discrimination on the basis of her national origin, sex, and disability, and she soon informed the District of the charges. In response, the conspirators publicly announced that the District was investigating her misconduct. Ahmed alleged that, while she was on paid leave, the Board members scheduled a pretextual evaluation of her performance to manufacture grounds for her termination. She further alleged that the defendants never informed her of what supposed misconduct they were investigating and did not provide her an opportunity to respond to the allegations. Later, she learned that they never conducted a misconduct investigation. Ahmed contends that these actions were retaliation for her "advocating for the rights of disabled students, taking an FMLA leave, and filing charges of discrimination with the EEOC and DOL." *Id.* ¶ 69.

Ahmed's Fourth Amended Complaint also includes factual allegations about two proffered comparators: her predecessor, Superintendent Evan Niczay, and her temporary replacement, Interim Superintendent Nabil Nagi. As to Niczay, she alleged that he transferred involuntarily several teachers but suffered no repercussions, and the District even re-hired him as a consultant. As to Nagi, she alleged that he refused to comply with laws governing the educational rights of disabled students which led to complaints and a class action lawsuit, retaliated against employees who complained about his disability policies and sex discrimination, and obstructed an investigation into the complaints against him. The District hired an outside investigator to review Nagi's alleged misconduct but did not suspend him during the investigation.

In February 2023, after Ahmed spent more than a year on paid leave, the School Board passed a resolution reinstating her as Superintendent pursuant to a new contract.

## II.     Procedural History

Ahmed filed her original complaint against the Union, five Board members, and the District while on paid leave in May 2022. She asserted thirteen claims, including disability discrimination under Titles I and II of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA); retaliation under Titles I and II of the ADA, the Rehabilitation Act, the PWDCRA, and Title VII; sex and national origin discrimination under Title VII and Michigan's Elliott-Larsen Civil Rights

Act; violations of her due process rights under the United States and Michigan Constitutions; intentional interference with contractual relations; and defamation and defamation per se.

Ahmed attempted to amend her complaint four times. A magistrate judge denied as futile her first motion to amend to add a conspiracy claim. While her second motion to amend was pending, the district court learned that the District had reinstated Ahmed as Superintendent, so the court instructed her to file an amended complaint that reflected the changed facts. Ahmed withdrew her second motion and filed a Third Amended Complaint which maintained all thirteen claims and added five new ones. The district court granted the District and Board members' motion to strike the Third Amended Complaint because Ahmed's amendments exceeded the scope of the leave given by the court. Finally, Ahmed moved for leave to file a Fourth Amended Complaint which removed her national origin discrimination claims and added five claims. The Fourth Amended Complaint also added new factual allegations that were pertinent to both her new and existing claims. The district court denied the motion as futile, keeping the original complaint as the operative pleading.

After the denial of leave to amend, the District and Board members filed a Rule 12(b)(6) motion to dismiss, and the Union filed a separate motion to dismiss. The district court granted both motions and dismissed all of Ahmed's claims with prejudice.

Ahmed timely appealed.

## ANALYSIS

The district court denied Ahmed's motion for leave to amend on the grounds that her proposed amendments were futile. Ahmed's threshold argument is that the district court's futility determination was erroneous as to two of her five new claims and that the court should have permitted her to proceed with her Fourth Amended Complaint. As we explain, she is correct.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires. However, a court may deny a motion to amend for, among other reasons, undue delay, bad faith by the movant, repeated failure to cure pleading deficiencies,

undue prejudice to the opposing party, or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Where, as here, the district court denied the motion for leave to amend on the basis of futility, we review the denial de novo. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Ahmed's proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Id.* Accordingly, we assess futility under the same standard applied to a Rule 12(b)(6) motion to dismiss and ask whether Ahmed's Fourth Amended Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although Ahmed raised five new claims in her Fourth Amended Complaint, she appeals only the district court's futility determination as to two of those claims: (1) FMLA retaliation and (2) Title IX discrimination. We consider the viability of each claim in turn.

### A.    FMLA Retaliation Claim[1]

First, we evaluate Ahmed's proposed FMLA retaliation claim against the District and the Board members. The FMLA prohibits an employer from retaliating against an employee for exercising her statutory right to medical leave and from using leave as a negative factor in employment actions. *Marshall v. Rawlings Co.*, 854 F.3d 368, 376 (6th Cir. 2017); *see also* 29 U.S.C. § 2615(a)(1). As an initial matter, Ahmed cannot bring a retaliation claim against the Board members in their individual capacities because the FMLA does not provide for individual liability against public-agency employers or supervisors. *Mitchell v. Chapman*, 343 F.3d 811, 825–26, 829 (6th Cir. 2003). So we consider the viability of her FMLA retaliation claim against the District and the Board members in their official capacities.

To survive a motion to dismiss, Ahmed must allege sufficient facts for us to infer that the defendants retaliated against her because of her protected FMLA activity, but she need not plead a prima facie case of retaliation. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012). The district court erred by applying a heightened pleading standard to her claim; it

---

[1]Ahmed's heading in her brief mentions both an FMLA interference and retaliation claim, but she makes no argument relating to an interference claim. Ahmed previously conceded that she was asserting only a retaliation claim, so we consider that claim alone.

determined her claim would be futile because Ahmed "failed to show causation and, accordingly, failed to establish a prima facie case of discrimination or retaliation under the FMLA." Order, R. 82, PageID 2327. But, at this stage, Ahmed need only plausibly allege that she was retaliated against because of her FMLA leave. *See Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024). On de novo review, we ask whether Ahmed alleged a plausible claim of retaliation, rather than a prima facie case, when analyzing futility.

*Retaliatory Act.* The parties focus their dispute on whether Ahmed plausibly alleged that the defendants acted with a retaliatory motive, but we pause to consider how the district court analyzed whether Ahmed even alleged a retaliatory act. For an FMLA retaliation claim, a retaliatory act (also referred to as an adverse employment action) is an employer action that "might have dissuaded a reasonable worker from" engaging in the protected conduct. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This standard, commonly known as the *Burlington Northern* standard, "is not limited to discriminatory actions that affect the terms and conditions of employment," 548 U.S. at 64, and we have described it as a "relatively low bar," *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). Our precedents establish that Ahmed has plausibly alleged an adverse employment action under this standard. In *Michael*, we held that "[t]he retaliatory actions alleged by [the plaintiff], including her brief placement on paid administrative leave and the 90-day performance plan, appear to meet this relatively low bar." *Id.* Ahmed was on paid administrative leave for much longer than the two days at issue in *Michael*, as her Fourth Amended Complaint alleged that her leave lasted over a year. It is at least plausible that placement on paid administrative leave for over a year, pending investigation of alleged misconduct, would dissuade a reasonable worker from taking FMLA leave, so Ahmed has plausibly alleged retaliation under the *Burlington Northern* standard.

Instead of analyzing Ahmed's allegations of retaliation under the *Burlington Northern* standard, the district court concluded that Sixth Circuit precedent foreclosed any argument that paid administrative leave was an adverse employment action. The district court stated that "the Sixth Circuit has repeatedly held that, without more, forced paid administrative leave pending an investigation into misconduct is not a materially adverse employment action." Order, R. 82,

PageID 2322. For this conclusion, however, the district court cited unpublished cases that applied the distinct standard from Title VII's anti-discrimination provision, rather than the *Burlington Northern* retaliation standard appropriate to this case. *See Ehrlich v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) (citing Title VII discrimination caselaw); *Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006) (Title VII discrimination). The cited caselaw not only involves the wrong standard, but as discussed below, does not survive the Supreme Court's subsequent decision in *Muldrow v. City of St. Louis*, which clarified the adverse-action requirement for Title VII discrimination claims. 601 U.S. 346 (2024). Ultimately, the district court concluded that Ahmed alleged an adverse action based on her allegations that no misconduct investigation ever occurred. While we agree that the lack of any investigation strengthens Ahmed's retaliation claim, those allegations are not necessary to allege retaliation. Instead, Ahmed's allegation that she was on paid administrative leave for over a year is enough to plausibly allege an adverse employment action for her FMLA retaliation claim.

*Retaliatory Motive.* We next consider whether Ahmed pleads sufficient facts to raise the plausible inference that the District and Board members placed her on administrative leave at least in part because she exercised her rights under the FMLA.

Ahmed argues that temporal proximity—between her FMLA leave and when the District placed her on administrative leave—raises the plausible inference of retaliatory motive. We have held that temporal proximity between protected activity and adverse employment action can establish causation for a FMLA retaliation claim. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012). We have also held, in the analogous ADA retaliation context, that we "may still draw an inference of causation where the defendant took advantage of its first meaningful opportunity to retaliate against the plaintiff, even if that opportunity did not arise until several months after the plaintiff's protected conduct." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 665 (6th Cir. 2020).

Here, Ahmed emphasizes that "she was denied reinstatement immediately following her FMLA leave." Appellant Br. at 36. Even though the District and Board members knew of Ahmed's FMLA leave when she left three months prior, they took the first opportunity they had to retaliate against Ahmed. After all, they could not retaliate by placing Ahmed on leave when

she was already on leave. So Ahmed's allegations that the District and Board acted at the first meaningful opportunity raise the plausible inference that they acted with retaliatory motive.

The District and Board members make several arguments for why Ahmed's proposed FMLA retaliation claim is futile, none of which is persuasive. *First*, they contend that her claim would be dismissed because she did not allege economic damages and is not entitled to any other requested relief under the statute. Even assuming Ahmed failed to allege economic damages, the defendants cite no caselaw in support of their conclusory statement that the FMLA "does not contemplate the type of symbolic declaratory and injunctive relief Plaintiff seeks." District Br. at 17. The defendants have not pointed to any precedent in this circuit establishing that declaratory judgments and injunctions are unavailable under the FMLA, so we decline to hold Ahmed's proposed amendment futile based on this argument. *Cf. Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th 602, 611 (7th Cir. 2022) (holding "the FMLA's use of equitable relief encompasses declaratory relief").

*Second*, the District and Board members contend that Ahmed's conclusory allegations of retaliation are undermined by her own allegations showing that "her employer was disgruntled for reasons other than her FMLA leave." Order, R. 82, PageID 2323–24. However, it is possible that the defendants retaliated against Ahmed for both the involuntary transfers and the FMLA leave. We have held that a plaintiff can bring an FMLA retaliation claim under either a single-motive theory, where an impermissible reason caused an employer's decision, or a mixed-motive theory, where both permissible and impermissible reasons motivated an employer's decision. *See Hunter v. Valley View Loc. Schs.*, 579 F.3d 688, 692 (6th Cir. 2009). Therefore, Ahmed's allegations that the defendants were disgruntled for reasons other than her FMLA leave do not preclude a plausible inference of causation for her FMLA retaliation claim.

*Third*, the District and Board members ask us to affirm the district court's conclusion that Ahmed failed to establish causation through comparator evidence. But Ahmed does not point to her proffered comparators as evidence for her FMLA retaliation claim (unlike for her Title IX discrimination claim), and, as we have explained, temporal proximity suffices for her low burden at this stage.

Accordingly, we reverse the district court's conclusion that allowing Ahmed to add an FMLA claim, along with her proposed amended factual allegations, would be futile.

### B.          Title IX Sex Discrimination Claim

We next consider Ahmed's proposed Title IX sex discrimination claim against the District.  Under Title IX, educational institutions that receive federal funding are prohibited from discriminating in any education program or activity on the basis of sex.  *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 349 (6th Cir. 2020) (citing 20 U.S.C. § 1681(a)).  When a plaintiff asserts a Title IX employment discrimination claim, we look to Title VII caselaw for the applicable legal standards.  *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1058 n.2 (6th Cir. 2022).[2]

Ahmed alleged that the District discriminated against her on the basis of sex by, among other things, placing her on paid leave.  To survive a motion to dismiss, Ahmed must allege sufficient facts to raise a plausible inference that the District took adverse action because of her sex.  Here too, the district court erred in requiring Ahmed to establish a prima facie case of sex discrimination to avoid a futility determination.  Order, R. 82, PageID 2330 ("Plaintiff fails to satisfy the causation element and, accordingly, fails to bring a prima facie case under Title IX.").  On de novo review, we instead ask whether Ahmed alleged a plausible claim of Title IX discrimination for leave to amend.

*Discriminatory Act.*  Although the parties focus their arguments on whether Ahmed's sex motivated the defendants' actions, we again pause to consider the district court's analysis of Ahmed's allegations that the District engaged in actionable discrimination.  The district court referred back to its earlier discussion of adverse action for Ahmed's FMLA retaliation claim and concluded, based on that analysis, that Ahmed had plausibly alleged an adverse action for her Title IX discrimination claim.  However, the legal standards for evaluating adverse action differ

---

[2]The Supreme Court recently granted certiorari in *Crowther v. Board of Regents of the University System of Georgia* on the question of "[w]hether Title IX provides employees of federally funded educational institutions a private right of action to sue for sex discrimination in employment."  No. 25-183, 2026 WL 1377024, at *1 (U.S. May 18, 2026).  We have previously entertained Title IX employment discrimination claims, *see Charlton-Perkins*, 35 F.4th at 1058 n.2, and no party asks us to diverge from that practice here.

between retaliation and discrimination claims. While the *Burlington Northern* standard applies to FMLA retaliation claims, the Title VII anti-discrimination standard applies to Title IX discrimination claims. *See Charlton-Perkins*, 35 F.4th at 1058.

After the district court denied Ahmed leave to amend, the Supreme Court clarified the adverse employment action standard for a Title VII discrimination claim. *Muldrow*, 601 U.S. 346. To plead an adverse employment action, a plaintiff must show "some harm respecting an identifiable term or condition of employment." *Id.* at 354–55. Before *Muldrow*, we applied a heightened standard, requiring plaintiffs to plead a materially adverse action, and we had "long held that an employer does not take a materially adverse action when it temporarily suspends an employee with *full pay* while 'timely' investigating the employee's potential misconduct." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 885 (6th Cir. 2024). However, *Muldrow* rejected our application of a heightened adverse action standard, and we have since explained that "one might reasonably argue that a temporary suspension (even with pay) causes 'some harm' and also concerns a 'term or condition' of the job—all that *Muldrow* now requires." *Id.*

We analyze Ahmed's allegations of discrimination under the newly clarified *Muldrow* standard and hold that she plausibly alleged that her paid administrative leave caused her some harm concerning a term or condition of her job. Her paid leave concerned a term or condition of employment because she was unable to perform her job duties for over a year. Ahmed also plausibly alleged that the leave caused her some harm, even though she received full pay and benefits. In *Muldrow*, the Supreme Court held that an involuntary transfer caused the plaintiff some harm because, among other things, "she was less involved in high-visibility matters and primarily performed administrative work." 601 U.S. at 359. Similarly, Ahmed alleged that, during her paid leave, she was replaced with an interim superintendent and prohibited from taking official actions or communicating with District employees. These effects began during Ahmed's voluntary medical leave but were involuntarily prolonged when the District placed her on paid administrative leave. Further, Ahmed alleged reputational harm resulting from the District's public announcement of a pending investigation into her supposed misconduct. So Ahmed plausibly alleged that she suffered some harm when she lost the ability to do her job for over a year, during which time she missed out on work experience and visibility and suffered

reputational harm.  That is enough to plead an adverse employment action for a Title IX discrimination claim.

*Discriminatory Motive.*  We next address whether Ahmed's allegations raise the plausible inference that the District placed her on paid administrative leave because of her sex.  Looking to Title VII caselaw, one way Ahmed can support a plausible inference of discriminatory motive is by identifying similarly situated employees outside her protected class who the District treated more favorably.  *See Jones v. Johnson*, 707 F. App'x 321, 328 (6th Cir. 2017).  Ahmed alleged that her male predecessor, Superintendent Niczay, involuntarily transferred teachers and suffered no repercussions.  Ahmed further alleged that, by contrast, she engaged in the same conduct by involuntarily transferring teachers and suffered consequences, including placement on paid leave.  Because the District disciplined Ahmed for the same conduct for which an employee outside her protected class was not disciplined, it is facially plausible that Ahmed's sex was a factor in the District's decision.  *Id.*  Further, Ahmed bolstered her claim by emphasizing that she had received two years of "highly effective" performance ratings when she was placed on leave. *See id.*  Ahmed also points to Nagi, her male interim replacement, who was not placed on paid leave during the District's investigation of his supposed misconduct, which included serious allegations of violating state and federal education laws along with sex discrimination and retaliation.  The District treated Ahmed and Nagi differently during their respective investigations, thus Ahmed plausibly alleged that her sex was a motivating factor for that discriminatory treatment.

We reject the District's argument that Ahmed must plead that her proffered comparators are similarly situated in all relevant respects.  The district court, conducting a traditional prima facie analysis that we undertake at the summary judgment stage, applied an improper heightened pleading requirement, and the District asks us to replicate this analysis.  The district court noted that Ahmed did not plead facts showing that "Niczay operated under the same or even similar conditions" to the COVID-19 pandemic, increased vacancies, and pressure from the Union and Board members.  Order, R. 82, PageID 2325–26, 2329.  As to Nagi, the court determined his situation was not nearly identical to Ahmed's "because the two received different responses to different actions."  *Id.* at PageID 2330.  At summary judgment, Ahmed will need to prove that

Niczay and Nagi were "similarly situated in all relevant respects and ha[d] engaged in acts of comparable seriousness," *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016), but she need not meet that standard at the pleading stage, *see Jones*, 707 F. App'x at 327–28. At this early stage, Ahmed plausibly alleged causation based on the fact that the District treated her differently than it treated similarly situated men performing the same job.

Accordingly, we reverse the district court's conclusion that allowing Ahmed to amend her complaint to add a Title IX discrimination claim would be futile.

### C.    Undue Delay, Failure to Cure Deficiencies, or Undue Prejudice

Finally, the District and Board members make the perfunctory argument that Ahmed's motion for leave to amend should be denied on the basis of undue delay, repeated failure to cure deficiencies, or undue prejudice.  They assert, without elaboration, that Ahmed "repeatedly failed to cure deficiencies by previous amendments, unduly delayed in alleging new factual allegations and five causes of action, and granting leave would result in undue prejudice."  District Br. at 24. The district court did not adopt this view.  And the defendants' response brief advances this point only in "a perfunctory manner, unaccompanied by some effort at developed argumentation," *Cockrun v. Berrien County*, 101 F.4th 416, 418 (6th Cir. 2024) (quotation omitted), so we decline to address it.

***

For these reasons, the district court should have granted Ahmed leave to amend her complaint to add her FMLA retaliation and Title IX discrimination claims along with new factual allegations that may be pertinent to these and many of her claims.  The court erred in denying her leave to amend and proceeding to evaluate the motions to dismiss Ahmed's original complaint. On remand, the district court must allow Ahmed to proceed with an amended complaint, consistent with this opinion.  We also recognize that there may have been additional factual developments in the case during the pendency of the proceedings and that it may be appropriate to allow for further amendments.

**CONCLUSION**

We vacate the district court's dismissal, reverse the district court's decision that allowing Ahmed leave to file her Fourth Amended Complaint would be futile, and remand for further proceedings consistent with this opinion.